*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re TATU, Minors

UNPUBLISHED
January 19, 2023

No. 361372
Oakland Circuit Court
Family Division
LC No. 2019-877007-NA

Before: CAVANAGH, P.J., and O'BRIEN and RICK, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to MCT and MRT under MCL 712A.19b(3)(c)(*i*) and (j). We affirm.

## I. BACKGROUND

Respondent and his long-time partner, R. Dendy,[1] have two children together: MCT and MRT. Between 2017 and 2019, Children's Protective Services (CPS) in both Roscommon and Oakland County investigated and monitored this family. Beginning in 2017, in an effort to avoid court intervention, CPS offered respondent and Dendy services to address their heroin addictions. In the months that followed, neither respondent nor Dendy meaningfully participated in or benefited from the preventative services. CPS began another investigation in May 2018, after receiving a complaint alleging that the children were without proper supervision on account of respondent's and Dendy's substance abuse.

In June 2018, Dendy left the children with A. Craigie, a family friend who resided in Roscommon, Michigan. In August 2018, with the assistance of the Department of Health and Human Services (DHHS), both respondent and Dendy executed a six-month power of attorney (POA) that permitted the children to remain in Craigie's care. The apparent intent of the POA was to allow Craigie to care for the children while Dendy sought inpatient substance abuse treatment.

---

[1] The children's mother, R. Dendy, was also named as a respondent in the petition and her parental rights were also terminated by the trial court. However, she has not appealed the court's order and is not a party to this appeal.

Dendy briefly attended inpatient treatment but at some point left the program and moved to Roscommon to live with Craigie and the children. Four weeks later, in October 2018, Dendy was arrested and jailed for six months.

Around this same time, respondent entered inpatient treatment but left the rehabilitation facility after three days against medical advice. Only a few weeks later, on August 27, 2018, respondent was incarcerated in the Macomb County Jail. Approximately 10 months later, he was transferred to the Oakland County Jail. During these events, the children remained in Craigie's care.

Sometime in May 2019, after Craigie and Dendy had a falling out, the children were moved from Craigie's home in Roscommon to the home of respondent's parents, where they would remain for the next three years.

When the children moved from Craigie's home to the paternal grandparents' home, neither respondent nor Dendy took any action to grant the grandparents legal authority to care for the children. At this time, respondent was incarcerated and Dendy's whereabout were frequently unknown. Dendy went months without contacting DHHS. Consequently, on September 30, 2019, DHHS filed a petition requesting that the court formally remove the children from respondent's and Dendy's care and make them temporary wards of the court.

Thereafter, the court assumed jurisdiction over the children and ordered respondent to comply with a treatment plan designed to remove the barriers to reunification. After 15 months of services, DHHS filed a petition to terminate respondent's and R. Dendy's parental rights. At the conclusion of a four-day termination hearing held between July 2021 and March 2022, the court found statutory grounds to terminate respondent's parental rights, and further found that termination of respondent's parental rights was in the children's best interests. Respondent now appeals.

## II. ANALYSIS OF THE ISSUES

### A. JURISDICTION

For his first issue on appeal, respondent argues that the trial court erred when it found statutory grounds to assume jurisdiction over the children. We hold that respondent is barred from challenging the court's assumption of jurisdiction after his parental rights have been terminated. The interplay of several court rules supports the conclusion that because respondent was advised of his appellate rights and did not timely appeal the initial order of disposition following adjudication, he is now barred from challenging the trial court's assumption of jurisdiction.

MCR 3.972 governs adjudicative trials in child protective proceedings. The dispositional hearings that follow adjudication are governed by MCR 3.973. Further, MCR 3.993(A) provides for an appeal by right of "any order removing a child from a parent's care and custody" and, most pertinent to this case, "an initial order of disposition following adjudication." MCR 3.993(A)(1) and (2). On June 12, 2019, just before issuing its decision in *In re Ferranti*, 504 Mich 1; 934 NW2d 610 (2019), our Supreme Court amended MCR 3.971(pleas), MCR 3.972, and MCR 3.973 to require trial courts to inform a respondent that, among other things, appellate review is available to challenge "an initial order of disposition following adjudication" and that the respondent may

be barred from challenging the assumption of jurisdiction in an appeal from the order terminating parental rights "if they do not timely file an appeal under MCR 3.993(A)(1), 3.993(A)(2), or a delayed appeal under MCR 3.993(C)." See MCR 3.972(F)(3) and MCR 3.973(G)(4). In essence, the rules require that parents timely raise challenges regarding the adjudication in their appeal of right from the initial dispositional order. However, in the event that a respondent is not informed that he or she is entitled to challenge a trial court's assumption of jurisdiction on appeal from the initial dispositional order, "the respondent may challenge the assumption of jurisdiction in an appeal from the order terminating [the] respondent's parental rights." See MCR 3.972 (G) and MCR 3.973(H).

In this case, the trial court properly and timely advised respondent of his appellate rights.[2] Consequently, because respondent did not thereafter timely file an appeal under MCR 3.993(A) or

---

[2] The adjudication trial was held on November 26, 2019 and December 10, 2019, at the conclusion of which the referee found statutory grounds to assume jurisdiction over the children on account of respondent's conduct. After finding that the children came within the court's jurisdiction, the referee immediately proceeded to disposition. During this phase, respondent was ordered to comply with and benefit from the case service plan. At the conclusion of these events, the referee advised respondent of his rights following adjudication and disposition, including his appeal rights and the right to have a judge review the referee recommendations, explaining as follows:

> The decision with regard to the adjudication and the decision with regard to this dispositional plan are reviewable to Judge McDonald.

> If you decide that you wish to review the referee's recommendation, it must be done in writing, state the grounds for review, and it should be filed with the court within seven days after the conclusion of this hearing or seven days after the issuance of the referee's written recommendation, whichever is later.

> The referee's recommendation will be on the order presented to the judge. Once the judge signs an order, it becomes a little bit of a different standard, a motion for reconsideration. A little bit tougher to have overturned.

> With regard to the decision for adjudication as well as the disposition, you know this isn't truly a verdict because a verdict is only a jury. But I have to read it the way it is written and the current rule right now drives me crazy.

> A verdict has been entered. That gives the court jurisdiction over your children. And that is with regard to mother, it does not include [Dendy's older child] in this case. There is appellate review available to challenge the Court's assumption of jurisdiction, an appeal of the initial order of disposition. That's assuming that Judge McDonald will sign an order – sign the order.

> If you are indigent, you're entitled to a court-appointed attorney to represent you on appeal and the preparation of relevant transcripts. You will also may be

-3-

a delayed appeal under MCR 3.993(C), he is now barred from challenging the assumption of jurisdiction in this appeal from the order terminating his parental rights.

## B. STATUTORY GROUNDS

Next, respondent argues that the trial court erred when it found statutory grounds to terminate his parental rights. We disagree.

In order to terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been established by clear and convincing evidence. *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000). This Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

The court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (j), which permit termination of parental rights under the following circumstances:

---

barred from challenging the assumption of jurisdiction if you do not timely file an appeal under 3.993A(2) or delayed appeal under MCR 3.993C. That was 3.993A(2).

Also, the Court has entered a disposition regarding you and your children in this case and you have the following rights. At any time while the Court takes jurisdiction over your children you may challenge the continuing exercise of the Court's jurisdiction by filing a motion for rehearing under MCL 712A.21 and MCR 3.992 or by filing an application for leave to appeal with the Michigan Court of Appeals.

Appellate review is available to challenge both an initial order of disposition, the following adjudication and any order removing a minor from a parents' care and custody. If you are indigent, you are entitled to a court-appointed attorney to represent you on an appeal as of right and to preparation of relevant transcripts.

You may be barred from challenging the assumption of jurisdiction or the removal of a minor from your care and custody and an appeal from the order terminating parental rights if you do not timely file an appeal under MCR 3.993A(1), A(2) or a delayed appeal under MCR 3.993(C).

I challenge any attorney to remember any of that stuff, let alone a layperson. The long and short of it is, if you do wish to appeal the decision in this case, get a review of referee recommendation up to the judge within the seven-day period or even more quickly, or you can file an appeal as of right, if the Judge signs an order, to the Michigan Court of Appeals.

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court did not clearly err when it terminated respondent's parental rights under these grounds.

The evidence established that in an effort to avoid court involvement, respondent was offered preventative services dating back to at least 2017. When respondent failed to benefit from these voluntary services, DHHS filed a petition requesting that the court take temporary custody of the children. The circumstances that led to the adjudication included respondent's substance abuse, his extensive criminal history, and his failure to provide for the children's care during his incarceration. After the court took jurisdiction of the children, respondent was offered a treatment plan designed to address the barriers to reunification. Respondent was ordered to comply with several services, including random drug screens, a substance abuse assessment, substance abuse treatment, parenting classes, a psychological evaluation, and individual therapy. He was also ordered to attend parenting time, stay in communication with the  caseworker, and obtain and maintain suitable housing and a legal source of income. Despite these efforts, the evidence demonstrated that the circumstances that precipitated the children's removal continued to exist. Respondent was in no better position to parent his children than when they were initially made temporary court wards.

The record clearly demonstrates that during the 2½ years the children were under the court's jurisdiction, respondent was unable to overcome the most significant barrier to reunification, namely, his substance abuse issues. Respondent had a history of abusing heroin, cocaine, and marijuana. He was ordered to participate in drug screens, a substance abuse assessment, and substance abuse counseling. The caseworker referred respondent six times for a substance abuse assessment. He failed to comply with the referrals and never participated in counseling or individual therapy. Respondent only provided five of the requested 91 drug screens, all of which were positive for marijuana and amphetamines. In February 2021, respondent was admitted to an inpatient substance abuse facility, but stayed only three days before leaving against medical advice. Respondent's wholesale failure to comply with the substance abuse component of his treatment plan demonstrated that he was unwilling or unable to address his addictions and commit to leading a substance-free lifestyle.

Respondent also was unwilling to refrain from criminal activity. Respondent's criminal history was extensive. Between 2010 and 2015, he was imprisoned, jailed, or on probation for

charges including forgery, uttering and publishing, breaking and entering a vehicle, home invasion, and possession of cocaine. When the children initially came into care, he was serving a sentence for retail fraud and possession of cocaine. Then, during the termination proceedings, respondent committed a series of retail fraud crimes over several months. He was incarcerated in September 2021, and ultimately sentenced as a fourth-offense habitual offender to 2 to 15 years' imprisonment. His earliest release date was in October 2023.

The parent-agency treatment plan also required respondent to obtain and maintain suitable housing. During the months that respondent was not incarcerated, despite being provided multiple resources, including financial assistance and a Section 8 referral, he was never able to obtain and maintain appropriate housing. Respondent frequently reported that he was staying with friends or in motels. Respondent claimed to be employed as a construction worker, but he never provided verification of gainful employment.

To his credit, respondent did complete parenting classes and he consistently attended visits with his children that were supervised by the paternal grandmother. However, during the entire time the children were in care, respondent never progressed beyond supervised parenting time. Additionally, while it was reported that the visits were appropriate and respondent engaged with the children, there was also testimony that respondent fell asleep during parenting time. On one occasion, during a virtual visit necessitated by the COVID-19 pandemic, he fell asleep behind the wheel of a presumably parked car.

Further, the record clearly established that there was no reasonable likelihood that respondent would be in a position to safely parent his children within a reasonable time. At the time of termination, the children had been wards of the court for 2½ years. During this time, respondent failed to adequately address the barriers to reunification. He would remain imprisoned until at least October 2023, and he testified that he would need at least six months after his release to be in a position to care for the children, which the trial court found was overly optimistic considering respondent's history.

The children were made wards of the court primarily because of respondent's substance abuse, criminality, and incarceration. Respondent was provided with a treatment plan designed to rectify the conditions that led to the adjudication. During the 2½ years the children were in care, respondent did not meaningfully participate in and benefit from the services offered. He did not demonstrate that he could properly parent the children, or that the children would be safe in his care. Termination of parental rights under § 19b(3)(c)(*i*) is warranted when "the totality of the evidence amply supports" the finding that the parent has not achieved "any meaningful change" in the conditions that led to the trial court assuming jurisdiction of the child. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). Petitioner met this evidentiary burden by clear and convincing evidence. Further, the record supports the trial court's finding that there was no reasonable likelihood that respondent would be in a position to safely parent his children within a reasonable time. Respondent had been offered services for years and he never meaningfully engaged in the treatment plan. Accordingly, the trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights under § 19b(3)(c)(*i*). Likewise, the court did not err when it found clear and convincing evidence to terminate respondent's parental rights under § 19(3)(j). "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re*

*White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). "Similarly, a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *Id*. at 711.

## C. BEST INTERESTS

Lastly, respondent challenges the trial court's finding that termination of his parental rights was in the children's best interests. After reviewing the record, we conclude that the trial court did not err in this regard.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of the parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The court may consider several factors when deciding if termination of parental rights is in a child's best interests, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. In considering the child's best interests, the trial court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *Id.* at 90. This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones*, 286 Mich App at 129.

MCT was 5½ years old at the time of termination, and MRT was 4½ years old. They had been in the care of their paternal grandparents for almost three years, more than half their young lives. Indeed, the only real home they had known was that of their grandparents. The children were doing well in this relative placement and all of their needs were being met. Throughout the case, the paternal grandparents wavered regarding whether they would be willing to adopt the children in the event respondents' parental rights were terminated. By the time of the termination hearing, however, they were firm in their commitment to plan for the children long-term through adoption.

By contrast, the record demonstrated that the children would be at risk of harm in respondent's care. Respondent was unwilling to meaningfully address his addiction issues and his likely related criminal conduct. When balancing the best-interest factors, a court may consider the advantages of a foster home over the parent's home and the possibility of adoption. *In re Olive/Metts*, 297 Mich App at 41-42.

Respondent argues that the trial court erred by finding that termination of his parental rights was in the children's best interests because a bond existed between him and the children. However, the testimony established that any bond that existed was deteriorating. Further, the bond would only continue to deteriorate because at the time of termination, respondent had been incarcerated for six months and would remain incarcerated until at least October 2023. Moreover, the

relationship did not evidence a typical parent-child bond. The paternal grandmother explained that the children just accepted respondent as someone who came to play with them. During parenting time, the children usually looked to the grandparents, not respondent, to address their needs. Thus, the existence of a bond was not a factor that significantly weighed against terminating parental rights. In any event, any bond did not outweigh the children's need for a safe and stable home that is free from drug abuse.

It is clear that the instability and lack of permanence was taking a toll on the children. The paternal grandmother implicitly recognized this when she explained that since the children had been with them for so long, they did not know "exactly what a mom/dad relationship should be like because they've never been with mom and dad for that long." Five-year-old MCT was at an age where he tacitly recognized that respondent was unwilling to put his children's needs ahead of his own desires. MCT told the caseworker that he thought respondent "liked being in jail more than with him." MRT asked the caseworker if she would be her mother. Clearly, respondent's instability was damaging the children's emotional well-being.

Respondent argues that it was not necessary to terminate his parental rights because the children were placed with relatives. The trial court acknowledged that the children's placement with the paternal grandparents would favor reunification, but it went on to properly balance relative placement with other relevant factors. The court noted the children's young ages and their need for permanency, stability, and finality. It also considered the risk to the children in respondent's care. Ultimately, the court concluded that termination of parental rights was in the children's best interests. Even though placement with a relative weighs against termination, and such a placement must be considered, a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests. *In re Olive/Metts*, 297 Mich App at 43. In this case, the trial court properly balanced relevant factors and it did not clearly err by finding that termination of respondent's parental rights was in the children's best interests despite that they were placed with relatives.

Respondent further argues that the trial court should have considered a guardianship with the paternal grandparents in lieu of terminating his parental rights. A trial court is not required to establish a guardianship if it is not in a child's best interests to so. *In re Mason*, 486 Mich 142, 168-169; 782 NW2d 747 (2010). In this case, the children were only 5½ and 4½ years old at the time of the termination. A psychologist who examined MCT explained that the children were quite young for a guardianship and, at their ages, MCT and MRT needed more stability than what a guardianship would offer. Further, the grandparents were not in favor of a guardianship because they felt it was not in the children's best interests. Accordingly, the trial court did not err when it concluded that a guardianship was not a viable option because it would not provide the permanency and finality that the children required.

In sum, the record supports a finding that respondent was not able to parent his children, and would not be able to parent them for several years, if ever. By contrast, the children were thriving in a stable home where their needs were being met. Termination was the best avenue for the children to achieve stability, permanence, and finality. Accordingly, the trial court did not

clearly err when it found that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Colleen A. O'Brien
/s/ Michelle M. Rick